IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Steven Sammet,                          :

        Plaintiff,          :     Civil Action 2:12-cv-854

    v.                                :     Judge Graham

Carolyn W. Colvin,                      :     Magistrate Judge Abel
Commissioner of Social Security,
        Defendant.          :

**REPORT AND RECOMMENDATION**

Plaintiff Steven Sammet brings this action under 42 U.S.C. §§405(g) and 1383(c)

(3) for review of a final decision of the Commissioner of Social Security denying his

applications for Social Security Disability and Supplemental Security Income benefits.

This matter is before the Magistrate Judge for a report and recommendation on the

administrative record and the parties' merits briefs.

**Summary of Issues.**  Plaintiff Sammet maintains that he became disabled on

December 30, 2008, at age 38, due to a head trauma, reconstructive surgery and memory

problems.  (*PageID* 214.)  Plaintiff argues that the decision of the Commissioner denying

benefits should be reversed because the administrative law judge erroneously found

Sammet's IQ score to be invalid.  According to Plaintiff, this resulted in a flawed analy-

sis at step three of the disability determination regarding the Listings of Impairments

and an ultimately flawed residual functional capacity assessment.  The administrative

law judge also failed to properly consider  Sammet's credibility when he improperly

acted as a medical expert and relied upon an a false inconsistency.  *See* Doc. 12.

**Procedural History.**  Plaintiff Sammet protectively filed his applications for disability insurance benefits and supplemental security income on September 8, 2009, alleging that he became disabled on December 30, 2008, at age 38.  (*PageID* 180-86, 187-92.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On May 17, 2011, an administrative law judge held a video hearing at which Plaintiff, represented by counsel, appeared and testified.  (*PageID* 82-106.)  A vocational expert also testified.  (*PageID* 107-12.)  On June 8, 2011, the administrative law judge issued a decision finding that Sammet was not disabled within the meaning of the Act.  (*PageID* 58-70.)  On August 20, 2012, the Appeals Council denied Plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 39-43.)

**Age, Education, and Work Experience.**  Sammet was born on November 22, 1970.  (*PageID* 180, 209.)  He has a high school education.  (*PageID* 219.)  Sammet previously worked as a stock manager at a produce company, truck driver, fork lift operator and pipe insulator.  (*PageID* 68, 215.)

**Plaintiff's Testimony.**  Sammet testified at the administrative hearing that he lived with a childhood friend, was single and had no minor children.  (*PageID* 82.)  He completed high school in regular education.  (*PageID* 83.)  He was not in special educa-

tion and did not repeat any grades.  (*PageID* 89.)  He was honorably discharged from the U.S. Air Force.  (*Id*.)

Sammet testified that he was first diagnosed with depression in 1992;  he had a psychiatric hospitalization at Riverside Hospital for a "mental breakdown."  (*PageID* 90.)  He had been taking Effexor for two years prior to the hearing.  (*Id*.)  Sammet testified that his primary care physicians recommended that he participate in an inpatient psychiatric admission to treat his depression.  (*PageID* 91.)  He testified that he did not follow through with the recommendation because he had no insurance and there is no room at the state sponsored facilities.  (*PageID* 91-92.)

Sammet testified that he had difficulties with concentration and memory. (*PageID*  92.)  He noted that prior to the accident, he didn't have to write anything down, use a calendar, etc.  "Now I'm pretty much helpless without making notes on memo pads or documenting stuff on a calendar that I can refer back to on a daily basis." (*Id*.)  He also reported that he has no social skills and spends all day in his home. (*PageID* 93.)

Sammet also testified to his lack of focus, noting he would get lost on truck routes he used to drive and he would have to call his mother back after she asked him to do something for her.  (*PageID* 96.)  He says that he has frequent, daily crying spells that can last up to 15 minutes at a time.  (*PageID* 98.)  Sammet testified that he could not read or write well, but this was not an issue before the motor vehicle accident.  (*PageID* 95-96.)

Sammet also explained that he suffers from chronic headaches and that several different pain relievers have been prescribed which do not help.  (*PageID* 99.)

A discussion was held regarding Sammet working after his accident in 2006 and 2007 and the significance of his alleged onset date of disability of December 30, 2008.  (*PageID* 102.)  Sammet noted that he had been getting wrote up at work and many different times pulled aside and talked to after the wreck.  He was fired for lack of following orders.  Prior to the motor vehicle accident, Sammet noted he had no problems taking care of his daily job duties.  (*Id.*)  Further discussion was held as to a third party statement from Sammet's former employer where she "braged" on Sammet's ability to work, and that she was not aware of Sammet's history of head injury.  Sammet was written up numerous times for dependability.  (*PageID* 103-04.)

**<u>Medical Evidence of Record</u>.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize the relevant evidence.

<u>Educational records.</u>

Sammet's high school transcript was included in the record.  Sammet graduated from Bishop Hartley High School in June 1989.  Sammet attended regular classes and his grades were generally B's and C's.  (*PageID* 282.)

<u>Marietta Memorial Hospital/Grant Medical Center.</u>

Sammet was in a motor vehicle accident on September 2, 2006.  The emergency room records from Marietta Memorial Hospital state Sammet was unrestrained, hit a

mailbox, then hit a tree.  Sammet believed he lost consciousness and experienced pain in his neck, mouth, and head.   On examination, Sammet had multiple lacerations, several teeth were loose on the right side as well as significant swelling on his face. (*PageID* 290-92.)  Sammet was transferred to Grant Medical Center due to the extent of his facial trauma.  (*PageID* 291.)

When admitted to Grant, it was noted that alcohol was involved in the motor vehicle accident.   (*PageID* 294.)  Examination at Grant showed he had a deep, 6 cm laceration to his right cheek as well as 4 cm laceration above the right eye brow.  He had a laceration to his right parietal scalp and a significant hematoma and blood clot with hemostasis.  Examination of his spine was nontender without step off or crepitus.  He had no tenderness to palpation or crepitus.  His pelvis was stable.  He was able to move all four extremities, complained of no pain with range of motion.  There were no deformities noted.   (*Id.*)  A head CT scan demonstrated extensive scalp swelling on the right.  (*PageID* 311.)  Mark D. Wells, M.D., a plastic surgeon, performed surgery to repair of several facial lacerations.  (*PageID* 308-10, 321-27.)

<u>Thomas Hurm, D.O./Westerville Family Health</u>

Sammet began treating with primary care physician, Dr. Hurm on August 25, 2009.  Sammet reported a history of his motor vehicle accident from 2006, noted he can't hold down a job and was in constant pain, including neck pain and headaches.  Sammet was found to have an abnormal gait and station, abnormal muscle strength of his left lower extremity, and abnormal recent and remote memory.  Dr. Hurm diagnosed Sam-

met with chronic cephalgia, chronic neck pain and chronic lumbar pain due to motor

vehicle accident, and a memory/cognitive disorder. (*PageID* 339.)

On October 6, 2009, Sammet was seen for wheezing, shortness of breath, and

lumbar pain. On examination, Dr. Hurm found tenderness of the lumbar midline.

Sammet was diagnosed with chronic low back pain, weakness, and a cognitive im-

pairment due to motor vehicle accident. That same day, Dr. Hurm completed a ques-

tionnaire on behalf of the state agency. Dr. Hurm reported that since Sammet's motor

vehicle accident in 2006, he has experienced memory loss (including dates, numbers,

etc.), poor focus, and poor concentration. He also stated that he had poor tolerance,

could not finish crossword puzzles, and had lost interest in hobbies. Dr. Hurm noted

Sammet has not responded to treatment. (*PageID* 335-38.)

Sudhir Dubey, Psy.D.

Sammet was examined by consulting psychologist, Dr. Dubey on November 10,

2009. (*PageID* 362-70.) He reported symptoms of headaches and memory problems

subsequent to a motor vehicle accident in 2006. (*PageID* 363.) Sammet reported that he

graduated high school with special learning reported in math. Sammet stated that his

last employment lasted for less than one year and was affected by his mental and phys-

ical disorder. Sammet described his mood as fluctuating between being depressed,

anxious, and irritable since his motor vehicle accident in 2006. He reported symptoms

of crying, problems sleeping, hot flashes and chills, irritability, and worrying. (*PageID*

364.) Sammet's ability to do simple calculations was in the below average range and his

general fund of information on past events and recent events was limited.  (*PageID* 365.)
Sammet reported he was unable to manage money on his own due to memory prob-
lems.  Sammet reported changes from functioning from prior to 2006 included being
unable to work outside the home, decreased socialization, depressed mood and inc-
reased irritability.  (*Id.*)

Sammet took the Wechsler Adult Intelligence Scale - 4th Edition which resulted
in a verbal comprehension index score (VCI) of 76, a perceptual reasoning index score
(PRI) of 60, a working memory index score (WMI) of 63, a processing speed index score
of 56 (PSI) and an full scale intelligence quotient (FSIQ) of 59.  (*PageID* 366.)  Dr. Dubey
determining that the results were an accurate estimate of Sammet's current level of
functioning.  He also found that timing of symptoms versus the date of the accident are
far enough removed so that the results are likely stable.  (*Id.*)

Dr. Dubey concluded that it appeared Sammet was functioning in the borderline
to mild mentally retarded range from an intellectual functioning standpoint and that his
performance is likely related to the injuries that he sustained.  (*Id.*)

Sammet was diagnosed with Dementia due to brain trauma and assigned a Glob-
al Assessment of Functioning (GAF) score of 60.

Dr. Dubey concluded that Sammet's mental abilities to understand, remember,
and follow simple instructions were not impaired, evidenced during the evaluation by
not needing to repeat questions or directions, and Sammet's ability during the evalua-
tion to carry out simple requests.  Dr. Dubey found that Sammet's abilities to maintain

attention, concentration, persistence and pace to perform simple, repetitive tasks were not impaired, as he did not demonstrate problems of attention and concentration when performing simple and direct tasks during the evaluation.  (*Id.*)  Dr. Dubey also found that Sammet's abilities to understand and follow complex instructions were mildly impaired, as shown by his performance on the objective testing, and his ability to perform complex tasks was moderately impaired, because Sammet demonstrated some problems with concentration, attention, and comprehension during his performance of the objective testing.  (*PageID* 368.)

Herbert A. Grodner, M.D.

On May 14, 2010,  Sammet was consultatively examined by Dr. Grodner on behalf of the state agency.  (*PageID* 396-402.)  Sammet described his 2006 motor vehicle accident and noted that since that time he has developed some low back pain and says that he feels a "popping and grinding."  He can walk for about 2-3 blocks.  He reported his pain radiates into his right hip.  He denies any numbness and tingling of his lower extremity, or any weakness of his lower extremities.  He also has neck pain.  He is right-hand dominant but he thinks he has lost the strength in his right hand, with numbness and tingling of his fingers.  He drops objects, such as a coffee cup.  He also reported blurred vision and headaches, recent memory problems, confusion, and poor concentration.  On examination, Sammet demonstrated decreased grip strength on the right side.  Lumbar x-rays demonstrated grade I spondylolisthesis of L5 over S1.

(*PageID* 397.)  Dr. Grodner found that Sammet could perform most types of daily activities and physical activities.  (*PageID* 398.)

Lisa Burns-Serrano, M.D.  Sammet began treating with primary care physician, Dr. Burns-Serrano on July 19, 2010.  He complained of depression and indicated that he wanted to start medications.  Dr. Burns-Serrano prescribed Effexor.  (*PageID* 404-05)

Cynthia Waggoner, Psy.D.  After reviewing the record on December 8, 2009, Dr. Waggoner, a state agency psychologist, found Sammet was mildly limited in his activities of daily living and moderately limited in maintaining social functioning and in maintaining concentration, persistence, and pace.  Sammet had no episodes of decompensation.  (*PageID* 385.)

Dr. Wagoner considered medical reports from Ohio Health-Grant, Dr. Hurm, and the consultative examining psychologist, Dr. Dubey. (*PageID 387.*) She noted his ongoing alcohol use on weekends, history of two DUIs (most recently three years before), and history of cocaine use. She said that himself denied trouble concentrating or recalling recent and remote events. His test scores on the WAIS-4 ranged from 56 to 76. His delayed memory was 44, and his memory 55. He later complained of chaos in Dr. Dubey's office that made him very anxious.[1] Although there was a diagnosis of

---

[1]A November 16, 2009 Report of Contact states, in relevant part:
When Steven spoke with me he was coherent, intelligent and a bit anxious. He told me that the appt was "pure chaos". He said that the situation was quite difficult on him. He said he was brought into an office to do some testing, brought back to the waiting room to wait for others to do testing and then back in to do more testing. It was very disorganized. he said people in the waiting room were yelling and cursing. He told me he

dementia, Dr. Dubey found only mild limitations to all but one "B" area, which he rated

moderate. (*Id.*)

In the narrative assessment of Plaintiff's ability to engage in work-related

activities from a mental standpoint, Dr. Waggoner concluded:

> [Sammet]'s allegations are only considered to be partially credible.  He
> give[s] conflicting  reports to different sources.  CE (consultive examiner)
> opinions are not given weight.  They are not consistent with the body of
> the CE report.
>
>  [Sammet]'s allegation of a head injury is not supported by any of the
> objective medical evidence in file.  [Sammet] was reportedly anxious at CE
> and this is what likely led to very low IQ and memory test scores at CE.
> Lack of effort on the part of [Sammet] could also be a contributing factor.
> Thus, CE's dx of dementia is not included here.
>
> [Sammet] does report a hx of drug abuse and continues to drink despite
> negative consequences, including DUIs and jail time.  He admitted to
> driving without a valid license 2 days prior to the CE.  A dx of Alcohol
> Dependence is given.
>
> A dx of Mood do [disorder] nos [not otherwise specified] is also given.
> [Sammet]'s irritability and lack of motivation are likely due to alcohol
> dependence and depression resulting from same.  Mood do [disorder] is
> likely substance induced.
>
> MER does not establish that  [Sammet] is unable to c/o mod complex
> tasks, conc.  for 2 hour periods, and make simple decisions.  He can relate
> superficially to a minimal number of coworkers and supervisors, and
> adapt to change in a stable work setting.  He can sustain mod levels of
> pace, persistence and production.

(*PageID* 391.)  On May 2, 2010, state agency reviewing psychologist, Karen Terry, Ph.,D.

affirmed Dr. Waggoner's assessment.  (*PageID* 394.)

---

cried during the exam. He sounded a bit anxious. . . .
 (*PageID* 242.)

**<u>Administrative Law Judge's Findings.</u>**  The administrative law judge found that:

1.   The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2.   The claimant has not engaged in substantial gainful activity since December 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: depressive disorder, likely substance induced and borderline intellectual functioning  (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the [administrative law judge] find[s] that the claimant has the residual functional capacity to perform a significant range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant can lift and/or carry and push and/or pull a maximum of 50 pounds occasionally and 25 pounds frequently; sit for four hours at a time and a total of eight hours during an eight hour work day; and walk and/or stand for up to four hours at a time and a total of eight hours during an eight hour work day.  The claimant has no significant postural, manipulative, visual, communicative, or environmental limitations.  The claimant is capable of simple to moderately complex tasks with no more than occasional (up to 1/3 of the day) interactions with public, co-workers and supervisors.

[6.]  The claimant is capable of performing past relevant work as an industrial truck operator, stores laborer, and tractor trailer truck driver.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

[7.]  The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(*PageID* 60-70.)

11

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the administrative law judge erroneously found Sammet's IQ score to be invalid.  According to Sammet, this resulted in a flawed analysis at step three of the disability determination regarding the Listings of Impairments, specifically 12.02 (organic mental disorders) and 12.05 (mental retardation), and an ultimately flawed residual functional capacity assessment.  Plaintiff also contends that the administrative law judge failed to properly consider Sammet's cred-

ibility when he improperly acted as a medical expert and relied upon an a false incon-

sistency. *See* Doc. # 12.

**Analysis.** In evaluating psychiatric impairments, the Commissioner's regula-

tions provide that the fact finder should consider such factors as the claimant's ability to

understand, carry out, and remember simple instructions, to respond appropriately to

supervision, co-workers and usual work situations, and to deal with changes in a

routine work setting. 20 C.F.R. §404.1521(b)(3), (5), (6). Disability is to be sequentially

evaluated. If the claimant is not currently engaged in substantial gainful activity and

has a severe impairment, the Commissioner must determine whether the impairment

meets or equals an impairment in Subpart P, Appendix 1. 20 C.F.R. §404.1520(d). The

signs and symptoms which would support a determination, on the basis of the psych-

iatric evidence alone without reference to the claimant's age, education, and work

experience, that he suffers from a totally disabling psychiatric impairment are set out in

§§12.01 through 12.09, Subpart P, Appendix 1, Listing of Impairments. The presence or

absence of these and similar signs and symptoms is controlling, not an individual phys-

ician's opinion on the ultimate issue of disability. 20 C.F.R. §§404.1513(b), (c), (d),

404.1526(b), and 404.1527.

In determining whether a claimant is disabled, an administrative law judge must

consider whether the claimant's impairments meet Social Security Listing requirements.

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medic-

ally equivalent to a listed impairment, the claimant is found disabled and benefits are

awarded.  20 C.F.R. § 404.1520(d).  A claimant's impairment must meet every element of

a Listing before the Commissioner may conclude that he or she is disabled.  *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a

listing, it must meet *all* of the specified medical criteria.").  *Bowen v. Yuckert*, 482 U.S.

137, 146 n.5 (1987).  The claimant shoulders the burden of producing medical evidence

that establishes that all of the elements are satisfied.  It is not sufficient to come to close

to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th

Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost estab-

lishes a disability" under Listing).  The regulations provide that in making a medical

equivalence determination, the Social Security Administration will "consider the op-

inion given by one or more medical or psychological consultants designated by the

Commissioner." 20 C.F.R. § 404.1526(c).

<u>Listing 12.02</u>

Sammet's primary argument addresses Listing 12.02, which reads in relevant

part:

> The required level of severity for these disorders is met when the
> requirements in both A and B are satisfied, or when the requirements
> in C are satisfied.
> A. Demonstration of a loss of specific cognitive abilities or
> affective changes and the medically documented
> persistence of at least one of the following:
> 1. Disorientation as to time and place; or
> 2. Memory impairment [...]; or
> 3. Perceptual or thinking disturbances [...]; or
> 4. Change in personality; or
> 5. Disturbance in mood; or

6. Emotional lability [...]; or
7. Loss of measured intellectual ability of at least 15 I.Q. points
from premorbid levels or overall impairment index clearly
within the severely impaired range [...];
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or
pace; or
4. Repeated episodes of decompensation, each of extended
duration;
OR
C. Medically documented history of a chronic organic mental
disorder of at least 2 years' duration [...]

According to Plaintiff, his condition meets the "A" requirement in that he had a

Full Scale IQ score of 59, based upon testing at the psychiatric consultative examination.

(Doc. 12 at *PageID* 427, referring to *PageID* 366.) Dr. Dubey explained that Sammet was

functioning in "extremely low range" for immediate memory, general delayed memory,

and working memory indexes. (*PageID* 366, referring to *PageID* 369.) Dr. Dubey noted

that testing revealed Sammet to be functioning in the borderline to mild mentally re-

tarded range from an intellectual functioning standpoint. There is not enough informa-

tion to substantiate a mentally retarded diagnosis on Axis II. His performance is likely

related to the injuries that he has sustained. (*PageID* 366.)

Even if the Court assumes that the diagnostic component of Listing 12.02 is

satisfied, Plaintiff cannot establish that he met the severity component. Listing 12.02

further provides that: "[t]he required level of severity for these disorders is met when

the requirements in *both A and B are satisfied,* or when the requirements in C are satis-

fied." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.02.  (emphasis added).  Instead, Plaintiff appears to assert that he met the listing because he satisfied the requirements of paragraph A, and specifically, paragraph A(7).  Thus, he ignores Listing 12.02's severity requirement that he satisfy "both A *and* B."  *See id.*  (emphasis added).

Sammet's argument concerning the "A" criteria is contradicted by his statements and testimony as explained by the administrative law judge.  The administrative law judge explained that Sammet's behavior, answers to questions, and his demeanor during the examination with Dr. Dubey were within normal limits.  (*PageID* 65-66.)  In addition, Sammet graduated from high school in regular classes.  (*PageID* 282.)  The medical record also fails to show that Sammet sustained any serious neurological damage from the accident.  (*PageID* 290-92, 294, 308-10, 311, 321-27.)

The administrative law judge concluded concerning the "A" criteria:

Part A of listing 12.02 requires demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following: disorientation to time and place; memory impairment, either short term or long term; perceptual or thinking disturbances (e.g., hallucinations, delusions); change in personality; disturbance in mood; emotional ability and impairment in impulse control; or, loss of measured intellectual ability of at least fifteen IQ points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing.  The evidence fails to document such.

The claimant's representative argues that the claimant meets Listing 12.02 because the claimant has a Full Scale IQ score of 59 in November 2009.  I find the claimant does not meet 12.02 because the IQ score of 59 is likely invalid and because the record does not contain any IQ tests indicating the claimant had a premorbid intelligence quotient (IQ) of 74 or higher.  Thus,

16

the record does not evidence that the claimant experienced a drop of 15 points in his intelligence quotient (or intellectual ability).

(*PageID* 62.)

The administrative law judge's decision also makes clear, that he considered whether Sammet met the requirements of paragraph B and concluded that he did not. (*See PageID* 61-63.)  The administrative law judge determined Sammet's severe mental impairments, considered singly and in combination, did not meet or equal the "paragraph B" criteria of Listings 12.02, 12.04[2], 12.05, or 12.09.  ("paragraph D" criteria of listing 12.05).  He conducted an independent analysis for each of the four paragraph B limitations.  (*Id.*)  Supporting each of his findings with substantial evidence from the record, the administrative law judge found that Sammet had only mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and experienced no episodes of decompensation that have been of extended duration.  (*PageID* 62.)  Based upon his finding that none of the four paragraph B criteria were satisfied, the administrative law judge concluded that:

_____

[2]To meet the paragraph B criteria for Listings 12.02 and 12.04, two of the following must be present:

1. Marked restriction of daily activities; or
2. Marked difficulties in maintaining social functioning, or;
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.02(B) and 12.04(B).

17

> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.

(*PageID* 62.)  Plaintiff fails to identify which, if any, of the four paragraph B limitations criteria the administrative law judge would have found he satisfied employing an analysis under Listing 12.02.

Listing 12.05

Plaintiff's next challenge to the administrative law judge's decision is that he erred by failing to find that Sammet satisfies Listing 12.05B.

Listing 12.05 reads in relevant part:

> *Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> B. A valid verbal, performance or full scale IQ of 59 or less.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001) (citations omitted)(emphasis in original).

There is absolutely no evidence in the record that Sammet had a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, that is, before age 22.  While Sammet's school records are a part of the evidence, those records do not contain the results of IQ testing which was administered during Sammet's developmental period.

Moreover, the examining mental health expert of record reported that Sammet did not exhibit deficits in adaptive behavior.  Indeed, Dr. Dubey reported that Sammet was not impaired in his abilities to understand, remember, and follow simple instructions and to maintain attention, concentration, persistence and pace to perform simple, repetitive tasks.  (*PageID* 368.)  Additionally, Dr.  Dubey opined that Sammet was, at worst, moderately impaired in his ability to perform complex tasks.  (*Id.*)  The administrative law judge also relied on the assessments of the state agency psychologists, Drs. Waggoner and Terry, who reviewed Plaintiff's medical records, and concluded that Sammet could perform simple and moderately complex tasks that did not involve much interaction with others.  (*PageID* 67-68, citing to *PageID* 375-93, 394.)

Under these facts, the administrative law judge did not err in finding that Plaintiff did not satisfy Listing 12.02 or 12.05.

<u>Credibility Assessment.</u>

An administrative law judge "is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 469, 476 (6th Cir. 2003),

citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An administrative

law judge's credibility determinations about a claimant are to be given great weight.

However, they must also be supported by substantial evidence. *Cruse v. Comm'r of Soc.*

*Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). "Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence." *Walters*, 127 F.3d at 531, citing *Bradley v. Sec'y of Health*

*& Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

      The administrative law judge here found Plaintiff's "statements concerning his

impairments and their impact on his ability to work are not entirely credible in light of

the medical history, the reports of treating and examining practitioners, the degree of

medical treatment required and the claimant's own description of his activities and

lifestyle." (*PageID* 64.) Sammet objects, arguing that the administrative law judge

improperly took on the role of a medical expert when he discounted Sammet's cred-

ibility. He states, "The ALJ's analysis of Mr. Sammet's credibility is fundamentally

flawed because he substitutes his own vision of the appropriate symptoms and treat-

ment presentation into his analysis. He further finds inconsistency where there is

none." (Doc. 12 at *PageID* 433-34.)

      The administrative law judge considered many factors when evaluating Sam-

met's credibility. The administrative law judge considered Sammet's medical records

and medical source opinions, objective clinical findings, treatment regimen and

medication use. (*PageID* 63-68.) The administrative law judge also concluded that

Sammet's overall credibility was questionable because his reported daily activities were inconsistent with the level and persistence of symptoms that he alleged.  (*PageID* 66.) work.  Specifically, the administrative law judge noted that Sammet is independent for his personal hygiene.  He cooks simple meals, cleans and can drive a car.  Although his social interaction is limited, he spends time with family and friends.  (*PageID* 66, citing to *PageID* 365.)  Further, Dr. Grodner noted that Sammet could perform most types of daily activities.  (*PageID* 398.)  The administrative law judge properly considered Sammet's testimony regarding the frequency and intensity of his symptoms; his medications and side effects; and his treatment history.  (*PageID* 63- 68.)  The administrative law judge properly relied on other evidence that did not support Sammet's allegations of severity.  (*Id.*)

The administrative law judge's determination that Sammet was not credible was supported by substantial evidence in the record, and evidence which he explicitly cited in his opinion.  The Court will therefore not find that his credibility determination was unsupported or erroneous.

**Conclusions.** From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**.

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R. Abel                  
United States Magistrate Judge